UNITED STATES of America,
Plaintiff-Appellee,

v.

MISSISSIPPI POWER & LIGHT COM-
PANY, Defendant-Appellant.

No. 75–2590.

United States Court of Appeals,
Fifth Circuit.

June 6, 1977.

E. Grady Jolly, Michael Farrell, Sherwood W. Wise, Jackson, Miss., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., L. A. Smith, III, Asst. U. S. Atty., Jackson, Miss., Louis G. Ferrand, Jr., David L. Rose, Employment Section, U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiff-appellee.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES,* District Judge.

AINSWORTH, Circuit Judge:

The United States brought this suit in 1974 to compel the compliance of appellant, Mississippi Power & Light Company (MP&L), with the equal opportunity obligations of Executive Order 11246, *as amended*,[1] and the implementing rules and regulations, 41 C.F.R. § 60–1.1 *et seq.* The district court held that MP&L is a government contractor subject to the Executive Order and the rules and regulations adopted pursuant thereto. The court held, moreover, that MP&L violated the Executive Order by denying the Government access to the company's premises and books. Therefore, the court issued a general injunctive order, permanently enjoining MP&L from failing or refusing to comply with the Order, so long as the company has not obtained an exemption from the program's coverage, and from refusing to allow the General Services Administration (GSA) or other appropriate federal agencies to conduct compliance reviews of MP&L and to have access to the company's premises and books. In a subsequent order, the district court stayed the injunctive order, pending appeal to this court.

This case presents the question whether the Government can impose the equal opportunity obligations of the Executive Order on a state-franchised public utility which, pursuant to its franchise, sells substantial amounts of electricity to the Government and enjoys an apparent near-monopoly in its area in the sale of electric utility service, even though the company has not agreed to be bound by the Executive Order. For the reasons stated in *United States v. New Orleans Public Service, Inc.* (NOPSI), 553 F.2d 459, the companion case which we also decide today, we hold that the Government can compel the company's compliance. Consistent with our opinion in *NOPSI*, we affirm the opinion of the district court, but set aside the court's general injunctive order.

MP&L is a public utility franchised by the Mississippi Public Service Commission to supply electricity to a substantial portion of the western half of Mississippi. The area covered by the company includes the cities of Jackson and Vicksburg. MP&L is the primary supplier of electric energy in that area, the company's franchise requiring that MP&L sell electricity to any consumer (including the Federal Government) requesting it. Thus, MP&L presently sells over $100,000 worth of electric service annually to various government agencies (including the GSA) with facilities in the state. The Government asserts that MP&L enjoys a "monopoly" under its franchise. The district court's opinion does not address this point. However, MP&L itself admits that "the government had no alternative source of electrical service." This fact triggers the policy we today announce in *NOPSI*, and we need not inquire further into the structure of the particular utility market or the precise details of MP&L's franchise.

* Senior District Judge for the Northern District of Texas, sitting by designation.

1. 30 Fed.Reg. 12319 (1965), 3 C.F.R. § 339 (1964–1965 Compilation), *as amended by* Exec. Order No. 11375, 32 Fed.Reg. 14303 (1967), 3 C.F.R. § 406 (1969), 42 U.S.C.A. § 2000e note (1974), *superseded in part (irrelevant for purposes herein) by* Exec. Order No. 11478, 34 Fed.Reg. 12985 (1969), 3 C.F.R. § 133 (1969 Compilation), 42 U.S.C.A. § 2000e note (1974). The Executive Order prohibits employment discrimination by government contractors. The Order requires that all covered government contracts contain a clause under which the employer agrees not to discriminate in employment on the basis of race, color, religion, sex or national origin, and further agrees to take affirmative action to achieve the equal opportunity objective. Exec. Order No. 11246, § 202(1). The Secretary of Labor is responsible for the administration of the federal contract compliance program, and is empowered to issue rules and regulations to implement the Order. *Id.* § 201. For a more detailed description of the program and its history, see our opinion in the companion case, *United States v. New Orleans Public Service, Inc.*, 5 Cir., 1977, 553 F.2d 459.

The facts fully support the district court's resolution of the issue whether MP&L is a government contractor subject to the Executive Order. The company admits that it has written and unwritten agreements to provide electric service to various federal agencies at fifteen different facilities, including the Post Office and Courtroom facilities at Jackson, Vicksburg and Greenville, and the Peoples-Newman Building in Vicksburg. Under these contracts, the company has supplied the Government for many years, and each of the facilities receives over $10,000 worth of electricity annually. The district court took particular note of the contracts for the Post Office and Courtroom facilities at Jackson and Vicksburg. The Government stated that the total value of those contracts, which were written, has been greater than $50,000 since 1973. MP&L admits that, while those contracts were executed in 1950, they have been amended through rate changes since the effective date of the Executive Order. However, MP&L states that only one of the contracts—that for the Greenville Post Office and Court House—has been executed since the Order's effective date and that none of the contracts contains the equal opportunity clause required by the Executive Order. MP&L asserts that it is not subject to the Order because it has never contractually agreed to be bound by it. We incorporate herein the reasoning of *NOPSI* insofar as is necessary to reject appellant's contention. The Government attempted to conduct compliance reviews of MP&L in 1972 and 1973, but the company responded that it was not subject to the Order. MP&L admits that it denied access to its premises to GSA officials in 1972.[2] Having found that the Executive Order was applicable to MP&L, the district court was clearly correct in holding that the company's refusal to comply with the Order constituted a violation of that mandate.

In this appeal, the company raises a number of issues. Specifically, MP&L makes the following assertions: (1) that the Government's stated cause of action is not one upon which relief can be granted because said cause is neither authorized by statute nor recognized at common law; (2) that the Secretary of Labor exceeded his authority in issuing 41 C.F.R. § 60–1.4(e)[3] because the regulation runs contrary to common-law contracts principles and principles of government-contract law; (3) that the district court opinion in the *NOPSI* case, which was adopted by the trial court herein, held erroneously that a contract provision not agreed to by the parties is incorporated into the contract when a government regulation requires the provision's inclusion in the contract; (4) that the provisions in the Executive Order and implementing regulations[4] for Government access to a contractor's books and records contravene the company's fourth amendment rights; (5) that the regulatory provision[5] for Government access to a contractor's premises also violates the fourth amendment, and is void not only for that

---

2. The district court also observed that, when the GSA that year tried to negotiate a formal contract with MP&L for electric service at the Federal Post Office and Court House building in Greenville, and the Government's proposed contract included, *inter alia,* both the nondiscrimination clause required by the Executive Order and a provision for access to the company's records, MP&L returned that contract unsigned and substituted in its place a service agreement which lacked the two provisions.

3. The regulation, 41 C.F.R. § 60-1.4(e), *as amended by* 42 Fed.Reg. 3454 (1977), provides:
   *Incorporation by operation of the Order.* —By operation of the Order, the equal opportunity clause shall be considered to be a part of every contract and subcontract required by the Order and the regulations in this part

to include such a clause whether or not it is physically incorporated in such contracts and whether or not the contract between the agency and the contractor is written.

4. Section 202 of the Order requires that covered contracts include a provision whereby the contractor agrees to permit access to its books and records by the contracting agency and Secretary of Labor so that they can determine the contractor's compliance with the Order.

   41 C.F.R. § 60-1.43 requires contractors to permit access to their premises during normal business hours in order that on-site compliance reviews can be conducted and company books and records inspected.

5. 41 C.F.R. § 60-1.43. *See* note 4 *supra.*

reason but also because it was beyond the authority of the Secretary of Labor; (6) that the *NOPSI* court erred in holding that 41 C.F.R. § 60–1.4(e) makes *NOPSI* subject to the Executive Order, pursuant to the company's unwritten contracts with the Government, and that the same principle applies herein with respect to MP&L; (7) that the *NOPSI* court erroneously held that a company such as NOPSI is subject to the Executive Order by virtue of 41 C.F.R. § 60–1.4(d); [6] (8) that the Government has violated its own`rules and regulations, 41 C.F.R. § 60–2.2(c),[7] by failing to give MP&L a 30-day show cause notice prior to instituting this action, and therefore is estopped from pursuing this case; and (9) that the district court erred in holding that the Executive Order has the force and effect of law. · MP&L's contentions are similar, although not identical in all respects, to those of the appellant in *NOPSI*. We find that, with the exception of MP&L's eighth assertion *supra* and some others which are without merit and do not require discussion, all of the preceding contentions are disposed of by our *NOPSI* opinion.

■ MP&L's argument that the Government violated its own regulations by failing to issue a 30-day show cause notice before instituting this action is also lacking in merit. MP&L relies on 41 C.F.R. § 60–2.2(c). The version of that regulation which was in effect at the time this suit was commenced directed the issuance by the compliance agency of such a notice in the situation where the Government has found that "a contractor has no affirmative action program or has deviated substantially from an approved affirmative action program or that his program is not acceptable." 41 C.F.R. § 60–2.2(c) (1974). The Government argues that this requirement is inapplicable to the situation at bar. According to the Government, the 30-day show cause notice must be issued only where the federal compliance agency has determined to seek cancellation or termination of an existing contract or debarment of a contractor from future contracts. The correctness of this position is obvious from the language of the regulation, *see id.* § 60–2.2(c)(1) and (2),

---

**6.** 41 C.F.R. § 60–1.4(d), *as amended by* 42 Fed. Reg. 3454 (1977), provides for the incorporation by reference of the equal opportunity clause in all government contracts.

**7.** 41 C.F.R. § 60–2.2(c) (1974) specifies the procedures to be followed by the appropriate government agencies between an agency's discovery of a contractor's noncompliance with the affirmative action obligations of the Order and the commencement of enforcement proceedings. The procedures include the issuance under certain circumstances of a show cause notice. According to the regulation,

[i]mmediately upon finding that a contractor has no affirmative action program or has deviated substantially from an approved affirmative action program or that his program is not acceptable, the contracting officer, the compliance agency representative or the representative of the Office of Federal Contract Compliance, whichever has made such a finding, shall notify officials of the appropriate compliance agency and the Office of Federal Contract Compliance of such fact. The compliance agency shall issue a notice to the contractor giving him 30 days to show cause why enforcement proceedings under section 209(b) of Executive Order 11246, as amended, should not be instituted.

(1) If the contractor fails to show good cause for his failure or fails to remedy that failure by developing and implementing an acceptable affirmative action program within 30 days, the compliance agency, upon the approval of the Director, shall immediately issue a notice of proposed cancellation or termination of existing contracts or subcontracts and debarment from future contracts and subcontracts pursuant to § 60–1.26(b) of this chapter, giving the contractor 14 days to request a hearing. If a request for hearing has not been received within 14 days from such notice, such contractor will be declared ineligible for future contracts and current contracts will be terminated for default.

(2) During the "show cause" period of 30 days every effort shall be made by the compliance agency through conciliation, mediation, and persuasion to resolve the deficiencies which led to the determination of nonresponsibility. If satisfactory adjustments designed to bring the contractor into compliance are not concluded, the compliance agency, with the prior approval of the Director, shall promptly commence formal proceedings leading to the cancellation or termination of existing contracts or subcontracts and debarment from future contracts and subcontracts under § 60–1.26(b) of this chapter.

**484**

which is quoted in the margin.[8] This suit was not invalid *ab initio* under that version of the regulation in effect at the time this suit was commenced. Our decision as to this issue is buttressed by the present version of the regulation, which reflects a recent amendment. *See* 42 Fed.Reg. 3454, 3457, 3462 (1977). The requirement of a 30-day show cause notice has been explicitly limited to the situation where the Government contemplates administrative enforcement.[9] As the Labor Department's accompanying comments thereto indicate,[10] the regulation was changed to make clear that the provision is inapplicable when judicial enforcement is contemplated. Those comments specifically endorse the district court's opinion herein, and we, similarly, decline to reverse it on the ground of the show cause issue.

■ For the foregoing reasons, we affirm the opinion of the district court holding that MP&L is a government contractor covered by the Executive Order. We find for the Government as to each of the issues raised by MP&L on appeal, and we incorporate herein our decision in *NOPSI* insofar as it pertains to the issues in the instant case.

■ Accordingly, in the exercise of our equitable discretion and for the same reasons as are enumerated in *NOPSI,* we set aside the district court's general injunctive order. Having found that MP&L is a government contractor subject to the equal opportunity obligations of the Executive Order and that MP&L's objections to the application herein of the Order are without merit, we hold that this case best would be dealt with at this stage through the Government's own administrative compliance processes. Therefore, we direct the Government to pursue that approach before again seeking the injunctive mandate of this court, if such aid in fact becomes necessary.

This result is influenced by the assertion of MP&L's counsel during oral argument

---

**8.** *See id.* The regulation can be read as requiring the issuance of a show cause notice whenever there is a finding by the Government that the contractor did not have an affirmative action program, that he had deviated substantially from such a program or that he had such a program but it was unacceptable. To prove the provision's inapplicability, the Government argues, *inter alia,* that such a determination could not be made in this case because of MP&L's refusal to permit a compliance review and to supply information requested from it by the GSA. This argument strikes us as contrived. MP&L's denials of coverage certainly put the Government on notice that, in all likelihood, the company was not complying with the Executive Order's affirmative action obligation. On the other hand, MP&L's argument on the show cause issue is purely technical, considering that the company admits that the Government's attempts to conduct a compliance review date back to 1972.

Subsection (c)(1) of the regulation states that the contractor's failure to show good cause for his noncompliance with the affirmative action requirement or his failure to remedy such noncompliance within the show cause period should immediately result in the Government's taking steps to impose the appropriate sanctions, *i. e.,* cancellation or termination and debarment. Subsection (c)(2) directs the Government to begin proceedings for the imposition of those sanctions if the contractor does not make satisfactory adjustments to bring himself into compliance during the show cause period. Thus, the Government is correct in pointing out that the regulation cited by MP&L is addressed to a different situation than the one here, where the Government is seeking to positively enforce the obligations of the program.

**9.** The current version of the regulation provides in pertinent part:

*Whenever administrative enforcement is contemplated,* the compliance agency shall issue a notice to the contractor giving him 30 days to show cause why enforcement proceedings under section 209(b) of Executive Order 11246, as amended, should not be instituted.

. . .

42 Fed.Reg. 3454, 3462 (1977), 41 C.F.R. § 60–2.2(c)(1) (emphasis added).

**10.** [L]anguage has been added to the show cause provision to clarify that it is only applicable when administrative enforcement under Part 60–2 (as opposed to judicial enforcement) is contemplated. This is consistent with OFCCP policy and federal court decision in *"United States v. Mississippi Power and Light Co.",* 9 EPH (CCH) ⸜ 10,164 (S.D.Miss., 1975), appeal pending, and *"United States v. New Orleans Public Service, Inc.,",* 8 EPD (CCH) ¶ 9795 (E.D.La., 1974), appeal pending, and is reflected in 41 C.F.R. 60–1.26.

42 Fed.Reg. 3454, 3457 (1977).

that the company stated at one point that it would agree to a GSA investigation pursuant to Executive Order 11246, even though MP&L took the position that it was not covered, in order to avoid litigation. While such willingness ended with the Government's pursuit of this action, MP&L's counsel stated, the company would comply with an investigation if ordered to do so by the court. Our decision as to the merits of this case has the practical effect of an order, and we see no reason to compel the company's compliance under threat of our contempt power, given MP&L's apparent willingness to proceed voluntarily and in good faith. We note, as we did in *NOPSI,* that our decision herein as to remedy is based solely on equitable considerations. The district court had the power to compel by injunction MP&L's compliance with the Executive Order; however, the exercise of that power was not yet appropriate or necessary. Our remedial tack today is premised on the assumption that MP&L will now comply fully, promptly and in good faith with Executive Order 11246, in accordance with this opinion and with *NOPSI.* We remind the company that any further delay would be intolerable.

MODIFIED AND AFFIRMED.

CLARK, Circuit Judge, dissenting:

For the reasons set forth in my dissenting opinion in *United States v. New Orleans Public Service, Inc.,* 553 F.2d 459 (1977), I respectfully dissent.