UNITED STATES of America,
Plaintiff-Appellee,

v.

Proby L. GRIFFIN, Defendant-Appellant.

No. 76–2553.

United States Court of Appeals,
Fifth Circuit.

July 18, 1977.

Rehearing Denied Sept. 6, 1977.

John R. Lee, Kermit, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy M. Jahn, Wayne F. Speck, Ronald P. Guyer, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

GODBOLD, Circuit Judge:

Defendant appeals his conviction on nine counts of mail fraud, 18 U.S.C. § 1341, and five counts of filing fraudulent claims for payment under the Medical Assistance Act, 42 U.S.C. § 1396. Griffin contends that the trial court erred in admitting evidence obtained as a result of the warrantless seizure of pharmaceutical records from his drugstore, Dixie Drugs. We find that the trial court did not err, and affirm the conviction.

Griffin entered into an agreement with the Texas State Department of Welfare whereby he would be reimbursed by the state for providing pharmaceutical services to welfare recipients. According to the terms of the contract Griffin was required to permit state officials to examine the prescription records of welfare recipients.[1] Agents of the Texas Department of Public Welfare arrived at Dixie Drugs and requested permission to examine the prescription records. They were told by an employee that Griffin had no objection to their inspection but requested they wait until he was present to begin their investigation. The agents waited a short while and then commenced their examination of the pharmacy's records although Griffin had not arrived. Thereafter, the agents concluded that it would be necessary to seize the pharmacy's copies of those prescriptions paid for by the State Department of Public Welfare.

■ The defendant moved to suppress all evidence obtained as a result of the foregoing seizure, and an evidentiary hearing was held. The trial court denied the motion, finding that "[t]he prescriptions were immediately recognizable to be incriminating and therefore properly subject to seizure." On appeal Griffin urges that the evidence presented at the suppression hearing failed to justify the seizure. He does not challenge the validity of the initial search but argues that the evidence did not establish that the seizure "was made at a time when a criminal offense had been committed or that either [agent had] . . . knowledge of the commission of any criminal offense." The trial court's finding of fact on a motion to suppress must be accepted unless clearly erroneous. *See U.S. v. James,* 528 F.2d 999, 1018 (CA5), *cert. denied, Henry v. U. S.,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). *U.S. v. Horton,* 488 F.2d 374, 380 (CA 5, 1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *U.S. v. Montos,* 421 F.2d 215, 219 n.1 (CA5), *cert. denied* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); *U.S. v. Ogle,* 418 F.2d 238, 239 (CA 5, 1969); *see* Fed.R. Civ.P. 52(a).

■ Warrantless searches are per se unreasonable subject to a few narrowly drawn exceptions. *E. g., Katz v. U.S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *see also, Elkins v. U.S.,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (evidence obtained by state agents in violation of Fourth Amendment is not admissible in federal court). One such exception is the knowing and voluntary consent of the person subject to the search. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).[2] In the instant

---

1. The contract required defendant to provide state and federal officials with "immediate access to his files of prescriptions and drug acquisition records that pertain to the Title XIX Medical Assistance Program for review and/or audit . . . ." Defendant further agreed: "To maintain and retain supporting fiscal documents adequate to assure that claims for Federal matching funds are in accordance with applicable Federal requirements." These records were to be maintained until audited, or if no audit occurs, for five years. Griffin testified that his understanding was that the files "should be available at all times" for inspection.

2. A somewhat distinct body of law has arisen governing administrative search and seizure. *See U.S. v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. U.S.,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). Concerning consent the Court in *Biswell* stated:

"In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute."

406 U.S. at 315, 92 S.Ct. at 1596, 32 L.Ed.2d at 92. As to what constitutes a valid statute authorizing a warrantless administrative search,

case defendant knowingly and voluntarily agreed by contract to maintain records of the prescriptions which he billed to the state and to make these records available for inspection at any time.

In *Zap v. U.S.,* 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946), Justice Douglas observed:

> [W]hen petitioner, in order to obtain the Government's business, specifically agreed to permit inspection of his accounts and records, he voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts. Whatever may be the limits of that power of inspection, they were not transcended here.

328 U.S. at 628, 66 S.Ct. at 1279, 90 L.Ed. at 1482. Justice Frankfurter dissented but said: "I agree that the Government had authority, as a result of its contract with the petitioner and the relevant statutes, to inspect the petitioner's books and records . . . ." 328 U.S. at 632, 66 S.Ct. at 1281, 90 L.Ed. at 1484. *See also,* Varon, Searches, Seizures and Immunities 285 (2d ed. 1974).

In *U.S. v. Ellis,* 547 F.2d 863 (CA 5, 1977), this court was presented with a somewhat analogous situation. A civilian, Gaskamp, drove his car onto a military base under the authority of a visitor's pass. The pass stated on its face: "Acceptance of this pass gives your consent to search this vehicle while entering, aboard, or leaving this station." *Id.* at 865. Acting on the authority of this pass a station investigator asserted a right to search Gaskamp's vehicle. Judge Clark writing for the court held: "Gaskamp, at the time of his entry onto the premises of the Naval Air Station, had validly consented to the subsequent search." *Id.* at 866. The court elaborated:

> the Court spoke in terms of a "history of government control" and the "acceptance of license in pervasively regulated business." 406 U.S. at 315–16, 92 S.Ct. 1593, 32 L.Ed.2d at 92. *See also, U.S. ex rel. Terraciano v. Montanye,* 493 F.2d 682 (CA2), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974). We need

Gaskamp stated he read the pass. He complied with its written requirement of display on his windshield. His decision to enter the base subject to the possibility of a search can in no wise be considered coerced. To the contrary, the consent was knowing and voluntary and could have left Gaskamp with no reasonable expectation of privacy in his vehicle. The right to make a search pursuant to such consent does not turn on the presence of probable cause.

547 F.2d at 867.

■ The crucial question which confronted the trial judge in this case was the validity of the seizure of defendant's records. For a seizure to be valid "[t]here must, of course, be a nexus . . . between the item to be seized and criminal behavior." *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967). Stated otherwise there must be probable cause to seize the item. The Court in *Warden* stated, "Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." 387 U.S. at 307, 87 S.Ct. at 1650, 18 L.Ed.2d at 792.

■ To establish probable cause, the government relied primarily on the testimony of Roy Weise, Director of the Texas Pharmacy Services Program. Weise testified that he participated in the search and seizure and further testified:

> Q. Now, then, did you find something that was in your mind, from a comparison of other items that you had previously examined, evidence of a crime?
>
> A. Yes.
>
> Q. And after you had audited and looked and saw that certain of these items appeared to you to be evidence of a crime did you take copies with you of these prescriptions?

not address the issues raised in *Biswell* since the search in the instant case was pursuant to valid consent. *See* Davis, Administrative Law Treatise § 3.05 (1976 Supp.) ("[T]he legal limits on investigation are the same whoever the public investigator is." *Id.,* Ch. 3, scope note.)

A. Not copies. I took the original.

Weise indicated that when he went to Griffin's store to examine the prescription records he carried along with him a computer printout which listed "all of the information" on file at the Texas Department of Public Welfare concerning claims for reimbursement made by Dixie Drugs. Weise stated at trial that he seized Griffin's files "because there had been some discrepancies noted and I picked them up to confirm the fact that the discrepancies actually existed." [3] This testimony supports the finding of the trial judge that the agents found what appeared to be incriminating material and that as such it was properly subject to seizure. The testimony of Weise that he noted a "discrepancy" between the information on file with the state and the original prescription files at Dixie Drugs is the kind of probable cause envisioned by the Supreme Court in *Warden v. Hayden.* That is, the investigating agents had probable cause to believe that they had unearthed evidence which would assist in the prosecution of a particular case. Griffin seeks to discredit this approach by government exhibit 5, a memorandum written by Weise the day after the seizure, emphasizing these two passages:

> I stated that I didn't know if there was a problem or not but that there was indication on these three prescriptions of a difference between the drug reported and the drug on the prescription.
>
> \* \* \* \* \* \*
>
> I also stated to him that I was in no position to say that there were problems

as far as this pharmacy was concerned but that the discrepancies found would be reviewed in the state office for final disposition.

Griffin argues that these statements indicate that the agents were not aware that they had come upon evidence of criminal activity. To the contrary, they indicate the agents found incompatibilities between the claims filed and the prescriptions filled. That Weise stated to the pharmacist on duty he did not know whether there was a "problem" does not change the fact that discrepancies were observed which gave rise to the inference that claims filed by Dixie Drugs with the Texas Department of Public Welfare were falsified. The finding of the trial judge that the agents had probable cause to seize the prescription records of Dixie Drugs is not clearly erroneous.[4]

The right of the agents to seize was not limited to the three prescriptions to which Weise specifically referred. Once there was probable cause to believe that there were discrepancies between claims filed by Griffin and his supporting prescriptions, the Departmental agents were justified in seizing the file of supporting prescriptions. (Prescriptions not relating to claims for reimbursement filed with the Department were not seized.)

AFFIRMED.

---

3. The appellate court in ruling on the correctness of the trial court's denial of a motion to suppress may consider any evidence presented at the trial of the case and is not limited to the evidence introduced on the hearing on the motion. *See Carroll v. U.S.,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925); *U.S. v. Smith,* 527 F.2d 692, 694 (CA 10, 1975); *Rent v. U.S.,* 209 F.2d 893, 896 (CA 5, 1954).

4. The trial court also found:
   "The agents had the continuing authority under the contract to conduct a full and complete audit. That contract did not specify that the audit was to be confined to the premises of Defendant's drug store. The sheer volume of the documents indicate[s] to

the court that a considerable period of time would be required to complete a full audit, and such could obviously best be effectuated at the offices of the agents of the State of Texas. Further, the contract itself provided that the defendant was to *furnish all reports* . . . . In fact the agents would have been justified to require Griffin to bring the records from Odessa to Austin, had the agents so requested."

We need not decide whether this finding is clearly erroneous, since we have concluded that the evidence gleaned from Griffin's records was properly admitted on other grounds.