692 F.2d 714
 30 Fair Empl.Prac.Cas. 448,
30 Empl. Prac. Dec. P 33,158,
30 Cont.Cas.Fed. (CCH) 70,575
FIRST ALABAMA BANK OF MONTGOMERY, N.A., a National Banking
Association, Plaintiff-Appellee,
v.
Raymond J. DONOVAN, as Secretary of Labor of the United
States, and Freeman C. Murray, as Administrative
Law Judge of the Department of Labor of
the United States,
Defendants-Appellants.
 No. 81-7677.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 22, 1982.
 
 Frank W. Donaldson, U.S. Atty., Sharon Lovelace, Birmingham, Ala., David L. Rose, Atty., Isabelle M. Thabault, Walter W. Barnett, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 The question presented in this appeal concerns the validity of a decision of the Secretary of Labor terminating the government contracts of First Alabama Bank of Montgomery for its refusal to cooperate with a compliance review under Executive Order (E.O.) 11246, which prohibits discrimination by government contractors. The district court voided the Secretary's order, holding that the reasonableness requirement of the Fourth Amendment to the Constitution protected First Alabama from such a review on the ground that the bank had already been subjected to employment discrimination litigation and three somewhat similar compliance reviews. We reverse.
 
 I.
 
 2
 First Alabama Bank of Montgomery is a holder of federal funds on deposit and is an issuer and redeemer of United States savings bonds. In various contracts with the United States, First Alabama agreed to be bound by the anti-discrimination provisions of E.O. 11246.[1] On November 21, 1979, the Department of Labor, which as of 1978 became responsible for overseeing compliance with the Executive Order,[2] notified First Alabama that it had been selected as one of the banks to be reviewed for compliance with E.O. 11246, Section 503 of the Rehabilitation Act of 1973, and Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974. Apparently, First Alabama had been selected on the basis of three criteria. First, nationwide studies by the Department of Labor indicated that the banking industry should be targeted as a growth industry with significant growth potential in employment. Second, First Alabama was one of twelve banks in its regional territory with more than fifty employees and over $50,000 in government contracts. Third, computerized data already on file reflecting workforce composition and number and percentage of women and minorities indicated that a compliance review of First Alabama was appropriate.
 
 
 3
 First Alabama informed the Department of Labor by letter that it would refuse to submit the materials and documents required for a compliance review. The bank contended that the investigation "would mock elemental concepts of fairness and due process" because the bank had just completed "a literal decade of Title VII litigation against this bank," in which it had been ordered to file with the clerk of the court some twenty-five quarterly employment reports.[3] Moreover, the Treasury Department had conducted E.O. 11246 compliance reviews in 1972, 1974, and 1976, and had found no evidence of discrimination by the bank.
 
 
 4
 Although the initial request for a compliance review had been forwarded without knowledge of the bank's history, officials of the Department of Labor[4] reviewed First Alabama's response and concluded that it was insufficient to excuse the bank from a compliance review. A new review was determined appropriate because the Title VII litigation involved private parties and was confined to race discrimination. In addition, the earlier reviews conducted by the Treasury Department were out of date and had been conducted by some thirteen different agencies with differing interpretations of how to conduct a compliance review. Thus, the Department of Labor issued to First Alabama a notice to show cause why enforcement proceedings should not be brought against it. After an unsuccessful attempt to reconcile their differences, the Department of Labor filed a complaint against First Alabama. After a hearing, an administrative law judge in December 1980 forwarded to the Secretary of Labor a Recommended Decision and Order of debarment from government contracts until First Alabama convinced the Secretary of Labor that it was in compliance with E.O. 11246. In support of his recommendation, the judge found that First Alabama had violated its contracts with the government by refusing to cooperate with the compliance review and that the Department of Labor's requests did not violate First Alabama's Fourth Amendment rights. The Secretary of Labor adopted the administrative law judge's recommendation on March 16, 1981.
 
 
 5
 First Alabama then sought judicial review of the Secretary's order in federal district court under Section 702 of the Administrative Procedure Act, 5 U.S.C.A. Sec. 551 et seq. (1977 & Supp.1982). After a hearing on a summary judgment motion by the government,[5] the court ruled from the bench in favor of First Alabama. It found that the proposed review was properly within the authority of the Department of Labor; that "there would be no real burden upon the plaintiff bank in this case to comply with the particular search here requested"; and that "the items involved [in the request] are either ones that have already and had already been compiled by the bank, and indeed were available for reproduction by the bank, or were matters that would shortly have to be compiled by the bank to comply with other regulations." For these reasons, the court concluded that "the particular search here requested would not have involved any oppressive time-consuming burdensome work on the part of the plaintiff bank."[6] It also found that some of the information sought by the Department of Labor would not have been available through other governmental sources.[7] The court held, however, that the government's failure to take proper account of the prior compliance reviews of First Alabama required the conclusion that the attempted search was unreasonable under the Fourth Amendment. Specifically, the court held that the proposed search violated the standard of United States v. Mississippi Power & Light Co., 638 F.2d 899 (5th Cir.), cert. denied, 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981), in that the government's selection of First Alabama "cannot be considered as pursuant to an administrative plan containing neutral criteria."[8] Accordingly, the court voided and set aside the Secretary's order.
 
 II.
 
 6
 The government raises two arguments against the district court's holding that the proposed search of First Alabama's employment records would have violated the Fourth Amendment. It argues initially that, by signing contracts with the government in which it agreed to accept the obligations imposed by E.O. 11246, First Alabama waived any Fourth Amendment right to object to a compliance review. It also suggests that, if the Fourth Amendment does apply, then this particular review would be reasonable within the meaning of that amendment and therefore constitutional. We address each contention in turn.
 
 A.
 
 7
 In presenting its argument that First Alabama waived its Fourth Amendment rights, the government relies heavily on Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). In Zap, the Supreme Court rejected application of Fourth Amendment standards to a search of the records of a government contractor who had specifically agreed in a provision of his contract with the Navy Department that "[t]he accounts and records of the contractor shall be open at all times to the Government and its representatives." Id. at 627, 66 S.Ct. at 1278. The Court held that this provision constituted a "voluntary waiver" of the contractor's Fourth Amendment rights. Id. at 628, 66 S.Ct. at 1279. The Supreme Court has since recharacterized the holding in Zap as an application of the recently established consent exception to the warrant requirement of the Fourth Amendment. See, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). See also United States v. Griffin, 555 F.2d 1323, 1324-25 (5th Cir. 1977). Accordingly, we frame the government's contention as a question of whether First Alabama expressly consented to the proposed compliance review.
 
 
 8
 In its various contracts with the United States, First Alabama agreed:
 
 
 9
 To be bound by the provisions of the equal employment opportunity clause set forth in Section 202 of Executive Order No. 11246, as amended (42 U.S.C. 2000e note) and the regulations issued pursuant thereto (41 CFR Chapters 60 and 10-12.8), in the same manner and to the same extent as if their provisions were set forth herein and certifies that it does not maintain and will not maintain or provide for employees any facilities which are segregated on the basis of race, creed, color, or national origin, at the main office or any branch office. (emphasis added).
 
 
 10
 In particular, Section 202(5) of E.O. 11246 provides that government contractors assume the obligation to:
 
 
 11
 furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.
 
 
 12
 First Alabama does not argue that it signed its contracts with the government involuntarily or that it did not expressly agree to be bound by E.O. 11246, including Section 202. See Schneckloth, supra (establishing voluntariness requirement of consent for Fourth Amendment purposes). Instead, it argues that its agreement in the contract did not include consent to searches that are unreasonable or otherwise unconstitutional.[9] The government does not controvert this, and we would not be inclined to read the contract to include such consent in any event. See United States v. Zap, 328 U.S. at 628, 66 S.Ct. at 1279 (contract governed Fourth Amendment rights of contractor where search was reasonable). Accordingly, we expressly limit our holding that the bank consented to Department of Labor compliance reviews only to those reviews which employ reasonable searches as that term is defined under the Fourth Amendment. We turn next, therefore, to a discussion of the reasonableness of the particular review in this case.
 
 B.
 
 13
 An understanding of the circumstances of this controversy is essential to the determination of the reasonableness, within the meaning of the Fourth Amendment, of the proposed compliance review.[10] First Alabama portrays itself in this litigation as a victim of harassment and oppression by the Department of Labor, particularly in light of its extensive history in court with the Title VII litigation and with the Department of the Treasury in the earlier E.O. 11246 compliance reviews. This latest round of investigation, the bank asserts, represents a classic case of bureaucratic heavyhandedness "run amuck."[11] Although this Court finds itself somewhat sympathetic to the bank's claim, it is not within our power to second-guess each investigatory decision of a federal agency. The Court's duty in this case is instead limited to ensuring that the decisions of the agency comply with the dictates of the Fourth Amendment to the Constitution.
 
 
 14
 Perhaps most significant in our evaluation of the relative interests at stake in this Fourth Amendment claim is the finding of the district court that the search would have imposed "no real burden" on the bank. As the district court indicated, the records in question either already had been prepared or would have been prepared in any event. While we agree with First Alabama that this factor does not determine whether the bank is entitled to claim a right to privacy, it does bear on the reasonableness of the search. Also relevant to its reasonableness is First Alabama's express and voluntary contractual undertaking to assume the obligations of E.O. 11246, including its information access provisions. Such an undertaking significantly decreases the urgency of First Alabama's claim to privacy in the documents which it had agreed to provide. Following the course pursued by the Supreme Court in United States v. Martinez-Fuerte, 428 U.S. 543, 555, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976), we weigh a relatively low privacy interest--as indicated by the small burden on the bank and the fact that it obligated itself to provide the requested information--against a relatively strong public interest in providing for full equal employment opportunity. See Franks v. Bowman Transportation Co., 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976) (goal of achieving equal employment opportunity is of the "highest priority").
 
 
 15
 With these general considerations in mind, we turn to the particular compliance review that precipitated this litigation. The test for determining the reasonableness of a review conducted pursuant to E.O. 11246 is set out in United States v. Mississippi Power & Light Co., 638 F.2d at 907-08. The test has at least three elements:
 
 
 16
 One element of the question is whether the proposed search is authorized by statute, and a second is whether it is properly limited in scope. [Marshall v. Barlow's, Inc.], 436 U.S. at 323, 98 S.Ct. at 1826, 56 L.Ed.2d at 318. A third element should be an examination of how the agency chose to initiate this particular search. The search will be reasonable if based either on (1) specific evidence of an existing violation, (2) "a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment], ' " 436 U.S. at 320-21, 98 S.Ct. at 1824, 56 L.Ed.2d at 316 (quoting Camera [v. Municipal Court], 387 U.S. at 538, 87 S.Ct. [1727] at 1736, 18 L.Ed.2d at 940), or (3) a showing that the search is "pursuant to an administrative plan containing specific neutral criteria." 436 U.S. at 323, 98 S.Ct. at 1826, 56 L.Ed.2d at 318. It is important that "the decision to enter and inspect ... not be the product of the unreviewed discretion of the officer in the field." See v. Seattle, 1967, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943, 947.
 
 
 17
 As to the first two elements, the district court found, and the Mississippi Power & Light Co. Court held as a matter of law, that searches conducted pursuant to E.O. 11246 are within proper statutory authority and are properly limited in scope. First Alabama finds no fault with either of these findings. The dispute in this case centers on the third element--relating to the district court's finding that the selection of First Alabama was not pursuant to an administrative plan containing neutral criteria.[12]
 
 
 18
 First Alabama does not dispute the government's contention that the Department of Labor's plan to focus on the banking industry and review banks with more than fifty employees and greater than $50,000 in government contracts is neutral on its face. Such a plan, which was adopted pursuant to national employment studies, clearly seems rational and reasonable. The focus of the attack on the neutrality of the plan is instead on the failure of the Department of Labor to consider First Alabama's prior history before it picked the bank for a review. As indicated earlier, however, the record in this case does not reflect a wholesale failure to consider the bank's litigation or earlier governmental reviews. The Department of Labor may have been unaware of these reviews at the time of its initial request to First Alabama, but subsequently it considered First Alabama's response, which described in detail what the bank had undergone over the last ten years.[13] At least three factors considered by the Department of Labor in its decision to pursue the investigation support the reasonableness of its action. First, federal regulations require federal contractors to update their affirmative action plans annually,[14] and the regulations state that any compliance review more than two years old is not current.[15] In fact, the three prior E.O. 11246 compliance reviews during the early 1970s had been conducted at two year intervals. Yet at the time of the Department of Labor's request, First Alabama had not been reviewed by a government agency for compliance with E.O. 11246 in over three years.[16] Cf. United States v. Blanchard, 495 F.2d 1329, 1331 (1st Cir. 1974) (regulatory inspection by Bureau of Alcohol, Tobacco and Firearms reasonable where twelve months had lapsed since prior inspection). Second, the Title VII litigation had been confined to race discrimination, and the government was not a party and did not have access to the relevant court records. Third, the record discloses that the bank had never been reviewed for compliance with Section 503 of the Rehabilitation Act or Section 402 of the Vietnam Era Veterans Readjustment Act. Taken together, these factors indicate that the decision to continue with the investigation was sufficiently reasonable to pass constitutional muster.[17]
 
 III.
 
 19
 The court below found that the Secretary of Labor's debarment order would have required the bank to provide the required employment information and, in addition, to demonstrate compliance with the Executive Order's affirmative action obligations as a whole. Because the administrative law judge reviewed only the bank's refusal to cooperate with the investigation, the district court indicated that, had it ruled for the government, it would have modified the order so as to require First Alabama only to purge itself of the refusal to provide the required information.[18] Cf. Uniroyal, Inc. v. Marshall, 482 F.Supp. 364, 375-76 (D.D.C.1979) (debarment order modified so as to require Uniroyal only to remedy its E.O. 11246 discovery violation; demonstration of full compliance with entirety of Executive Order program unnecessary). Clearly, the purpose of debarment is limited to encouraging compliance and is not intended for use as punishment for non-compliance. See Section 209(a)(6). Accordingly, we VACATE the decision of the district court, and REMAND this case with instructions for the district court to modify the debarment order so as to permit First Alabama to rectify its refusal to cooperate with the compliance review. Unless First Alabama provides the information as required in its contracts, however, its debarment stands.
 
 
 
 *
 Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 E.O. 11246 and its accompanying regulations prohibit, inter alia, discrimination on the grounds of race, sex, color, religion, or national origin by government contractors or subcontractors. It imposes a duty on the contractor or subcontractor to establish and update annually a written affirmative action program, and provides for compliance investigations by the Department of Labor. Sanctions for non-compliance include referral to the Department of Justice for legal action, termination of existing government contracts, and debarment from future government contracts
 
 
 [2]
 Until 1978, the Department of the Treasury was responsible for overseeing compliance with E.O. 11246 in the banking industry
 
 
 [3]
 Although the bank claims that the Title VII litigation to which it referred started on October 27, 1969, the court's opinion indicates the commencement date of the action as February 16, 1972. Henderson v. First National Bank of Montgomery, 360 F.Supp. 531, 533 (M.D.Ala.1973) (First Alabama Bank of Montgomery was formerly known as First National Bank of Montgomery). October 27, 1969, was the day that plaintiff Mamie Henderson applied for a job at the bank. Id. at 535. The court found against the claims of the named plaintiffs (the action was brought as a class action for injunctive relief) and concluded that the bank was "not now discriminating against black persons in its hiring practices." Id. at 540. It also found, however, "that as a result of past discrimination by the [First Alabama Bank] of Montgomery the present hiring policies have been infected to some degree and that the same should be eradicated." Id. at 547. Accordingly, the court ordered that the bank file with the clerk of the court quarterly employment reports, which continued until 1979
 On May 10, 1976, the Equal Employment Opportunity Commission filed a proceeding to compel compliance with the Henderson order. On January 30, 1977, the district court granted the bank's motion for summary judgment and also granted the bank attorney's fees on the ground that the EEOC proceeding had been brought "on ... nebulous grounds ... where there is no evidence to sustain its theory." The Fifth Circuit affirmed. Equal Employment Opportunity Commission v. First Alabama Bank of Montgomery, 595 F.2d 1050 (5th Cir. 1979).
 
 
 [4]
 According to the government, these officials included an Area Director, an Employment Opportunity Specialist, and a representative of the Office of the Solicitor of Labor
 
 
 [5]
 Although bound by the "substantial evidence" standard of review as to the factual findings of the administrative law judge, see 5 U.S.C.A. Sec. 706(2)(E), the district court was permitted to consider First Alabama's constitutional arguments de novo. See id. Sec. 706; Coca-Cola Co. v. Atchison, Topeka, and Santa Fe Railway Co., 608 F.2d 213, 218 (5th Cir. 1979)
 
 
 [6]
 Transcript of District Court Findings of Fact and Conclusions of Law 11-12
 
 
 [7]
 Tr. at 13
 
 
 [8]
 Tr. at 20
 
 
 [9]
 In support of this position, First Alabama quotes the following statement found in United States v. Mississippi Power & Light Co., 638 F.2d at 906 n. 11, in which the former Fifth Circuit addressed the argument that E.O. 11246 establishes an implied consent exception to the Fourth Amendment:
 As the discussion in [Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) ] makes clear, implied consent to administrative searches is not easily found. This does not, however, affect our holding that the companies assumed the affirmative action obligation by dealing with the government. It is one thing to say that the companies' action in furnishing services to the government implies an acceptance of a policy of non-discrimination and affirmative action; it is entirely another to say that it also implies a willingness to give up fourth amendment rights.
 First Alabama's reliance on this language is misplaced for two reasons. First, in Mississippi Power & Light Co. the parties involved had not expressly agreed in their contracts with the federal government to accept the obligation of E.O. 11246. United States v. New Orleans Public Service, Inc., 553 F.2d 459, 469 (5th Cir. 1977); United States v. Mississippi Power & Light Co., 553 F.2d 480, 482 (5th Cir. 1977) (these two cases were consolidated on appeal to the Supreme Court, see 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783, and were vacated and remanded in light of Marshall v. Barlow's, Inc., supra; the former Fifth Circuit remanded the cases to the district court after the Supreme Court remand, which resulted in a subsequent appeal to the former Fifth Circuit and the opinion quoted above). In the present case, the contract contained an express agreement by First Alabama to comply with E.O. 11246. Second, the issue in Mississippi Power & Light Co. and Marshall v. Barlow's, Inc. in part involved the application of what is now known as the Colonnade-Biswell exception to the Fourth Amendment. This exception holds that those who operate businesses in certain heavily regulated industries impliedly waive their Fourth Amendment objections to administrative searches. See United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). Although the government in its brief invites this Court to extend the Colonnade-Biswell doctrine to businesses covered by E.O. 11246, and in particular to the banking industry, we decline to do so for the same reasons that the Court in Mississippi Power & Light Co. declined to do so. See 638 F.2d at 907. Moreover, given our holdings that First Alabama expressly consented to reasonable searches and that the search in this case was reasonable, we need not rest on a holding of implied consent.
 Significantly, the Court in Mississippi Power & Light Co. was willing to inquire into the reasonableness of the contested search even though the parties had not expressly consented by contract to E.O. 11246 searches. Read in this light, Mississippi Power & Light Co. would support reversal of the district court if the proposed compliance review in this case was reasonable, regardless of whether First Alabama agreed expressly to assume the obligations of E.O. 11246.
 
 
 [10]
 First Alabama does not argue that a judicial warrant should have been obtained by the Department of Labor prior to undertaking its compliance review. In United States v. Mississippi Power & Light Co., 638 F.2d at 907, the former Fifth Circuit held that the Department of Labor need not obtain warrants before conducting compliance reviews under E.O. 11246. In reaching this conclusion, the Court drew on recent language from the Supreme Court opinion in Marshall v. Barlow's, Inc., 436 U.S. at 325, 98 S.Ct. at 1827, suggesting that to pass constitutional muster an administrative search program must authorize inspections with a warrant "or its equivalent." Examining the administrative search program conducted under E.O. 11246, the Mississippi Power & Light Co. Court concluded that the Executive Order program contains procedural safeguards "roughly equivalent to those contained in traditional warrants." 638 F.2d at 907. The decision in Mississippi Power & Light Co. is binding on this Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc)
 
 
 [11]
 In support of this contention, First Alabama points to a recent report prepared by the staff of the Senate Committee on Labor and Human Resources. The report addresses various structural and substantive problems with the E.O. 11246 program and proposes either the issuance of a new Executive Order or the passage of correcting congressional legislation. As an example of the need for major reform of the Executive Order as currently written, the staff cites the Secretary's order against First Alabama as an example of administrative action which its proposals would prevent. See Staff of Senate Comm. on Labor and Human Resources, 97th Cong., 2d Sess., Committee Analysis of Executive Order 11246, at 14, 51-52 (Comm. Print April 1982). The Committee Print indicates that the report has not been officially adopted by the Labor and Human Resources Committee, "and may not therefore necessarily reflect the views of the members."
 
 
 [12]
 The Department of Labor did not base its decision to conduct a compliance review of First Alabama on any specific evidence "of an existing violation." And our analysis of whether the search here is pursuant to a plan containing neutral criteria would be the same for the determination of whether the Department of Labor followed "reasonable legislative or administrative standards."
 
 
 [13]
 Initially the district court indicated that the Department of Labor had given no consideration to the prior reviews. Tr. at 20. In a subsequent colloquy with the court, however, government counsel pointed out, and the court acknowledged, that the Department of Labor reviewed certain papers relating to the prior reviews after receiving First Alabama's response and before deciding to pursue the investigation. Tr. at 23-27
 
 
 [14]
 41 C.F.R. Sec. 60-1.40(c)
 
 
 [15]
 41 C.F.R. Sec. 60-60.3(c)
 
 
 [16]
 Moreover, the bank had never been reviewed by the Department of Labor
 
 
 [17]
 First Alabama also argues in this appeal that the administrative procedure followed in the Executive Order regulations violates due process by permitting a quasi-judicial hearing by an administrative law judge who is employed by the same agency that initiates the review. This argument is without merit and has been rejected by the Supreme Court. See, e.g., Withrow v. Larkin, 421 U.S. 35, 47-50, 95 S.Ct. 1456, 1464-66, 43 L.Ed.2d 712 (1975)
 
 
 [18]
 Tr. at 22